UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALEXIS ANN BARNABA, as guardian ad litem for minor child and successor-in-interest A.N.Y.; and YVETTE YOUNG,

Plaintiffs,

v.

COUNTY OF SAN DIEGO and DOES 1 through 10, inclusive,

Defendant.

Case No.:  23-cv-01622-AJB-SBC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**(Doc. No. 19)**

Presently before the Court is Defendant County of San Diego's motion to dismiss Plaintiffs Alexis Ann Barnaba, as guardian ad litem for minor child and successor-in-interest A.N.Y., and Yvette Young's (collectively, "Plaintiffs") First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19.) The motion is fully briefed, (Doc. Nos. 19, 21, and 22), and pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the County's motion to dismiss Plaintiffs' FAC.

///

///

1

## I.    BACKGROUND

The following allegations are accepted as true for the purposes of this Fed. R. Civ. P. 12(b)(6) Motion. This action arises out of the death of Chaz Guy Young-Villasenor ("Decedent") while incarcerated as a pretrial detainee at the San Diego County Central Jail. (FAC, Doc. No. 18, ¶ 7.) There, on May 5, 2022, Decedent died of "an overdose of . . . methamphetamine and/or fentanyl[.]" (*Id.* ¶ 27.)

Plaintiffs allege staff at Central Jail knew Decedent was "arrested for . . . possession of illicit narcotic drugs, knowing that he was a frequent illicit narcotic drug user and/or addict[.]" (*Id.* ¶ 20.) After ingesting "dangerous narcotic drugs[,]" Decedent "went into serious and obvious medical extremis" where he "collapsed in his jail cell . . . squirm[ed] and writhe[d] on his jail cell floor for several hours . . . and ultimately died." (*Id.* ¶ 27.)

Plaintiffs now bring this case individually and as Decedent's successor-in-interest against: (1) the County; (2) Does 1–6 (whom Plaintiffs allege are "sworn peace officers and/or deputy sheriffs and/or Custodial Officers and/or Special Officers and/or police officers and/or supervisors and/or investigators . . . and/or Sheriff's Aids and/or Nurses and/or Doctors and/or other health officials and/or dispatchers and/or some other public officers, officials or employees of defendant COUNTY and/or some other public entity"); and (3) Does 7–10 (whom Plaintiffs allege "are supervisors and policy-making officials, including the Sheriff of the County of San Diego, the Undersheriff of San Diego County, the Sheriff's Assistant Sheriffs, Commanders, Captains, Lieutenants, Sergeants, Detectives and/or other Supervisory personnel employed by COUNTY and/or the County Executive Officer and/or Members of the Board of Supervisors of San Diego County, and/or Doctors and/or Nurses and/or other County Health Personnel / Officers / Officials and other County Officers / Officials"). (*Id.* ¶¶ 8–10.)

Plaintiffs present four factual theories about Defendants' involvement in Decedent's death: (1) Decedent was "sold or otherwise provided with dangerous narcotic drugs by DOES" while in-custody and confined as a Pretrial Detainee, (*id.* ¶ 19); (2) Decedent was provided such drugs by "inmates" with "DOES 1 through 3 . . . knowing that said inmates

2

at the jail were providing said dangerous narcotic drugs to other inmates at jail, including" Decedent, and failed to stop them despite the "opportunity," (*id.* ¶ 20); (3) Decedent was provided drugs by inmates because Does 1 through 3 were paid by inmates at County Jail to "permit them to sell and distribute said dangerous narcotic drugs," (*id.* ¶ 21); and (4) Decedent was provided drugs by inmates because Does 1 through 3 were "paid by persons who were not inmates" at County Jail to permit said inmates to "sell and distribute said dangerous narcotic drugs[,]" (*id.* ¶ 22).

Plaintiffs further allege Does 7 through 10 have a "longstanding custom and practice of condoning and/or otherwise failing to prevent its deputy sheriffs [and] . . . other jail personnel from bringing dangerous narcotic drugs" into San Diego County Jails. (*Id.* ¶ 13(a).) Does 7 through 10 also allegedly fail to train its officers on "how and when to provide medical care to Jail inmates [. . .]" and "how to recognize when inmates are suffering from severe medical distress," including drug overdoses. (*Id.* ¶ 13(b)–(c).) Does 7 through 10 also allegedly have a "longstanding custom and practice of failing to provide medical care to jail Inmates" at San Diego County jails when inmates "appear to be in serious/acute medical distress," including drug overdoses. (*Id.* ¶ 13(d).) Plaintiffs further allege Does 7 through 10 have a "longstanding custom and practice of failing to discipline and/or train its deputy sheriffs [and] . . . other jail personnel, for failing to provide medical care to jail Inmates at the San Diego County Jails," including inmates "who appear to be in serious/acute medical distress," including drug overdoses. (*Id.* ¶ 13(e).)

Under any of the above theories, Plaintiffs allege Does 1 through 6 knew of Decedent's need for medical assistance after his ingestion of drugs and were "deliberately indifferent" and "disregarded it by failing to take reasonable measures to address it." (*Id.* ¶ 25.) As a result, Decedent suffered "tremendous physical, mental and emotion pain [. . .] for several hours, until he ultimately died[.]" (*Id.* ¶ 27.)

Based on these allegations, Plaintiffs bring nine causes of action against the County and Doe Defendants 1–10. (*See generally id.*) The County moves to dismiss all of

Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Doc. No. 19.)

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can move forward. *Id.* at 588 (internal quotations and alterations omitted).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the first amended complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

///

///

### III. DISCUSSION

#### A. Section 1983 Claims – Fourteenth Amendment

Plaintiffs' first five causes of action are 42 U.S.C. section 1983 claims brought under the Fourteenth Amendment. (FAC ¶¶ 17–106.) As an initial matter, the County argues it is not liable for private crimes under Section 1983. (Doc. No. 19-1 at 11–12.) Stating that "[p]roviding narcotics provides no conceivable governmental purpose regardless of who provides them," the County argues that such drug-dealing actions as alleged in the FAC are not committed under the color of law, as is required by Section 1983 liability. (*Id.*) Citing *Van Ort v. Stanewich*, 92 F.3d 831 (9th Cir. 1996), the County compares the allegations in the FAC against Does to the actions of an off-duty Sheriff's Deputy in *Van Ort* who forcibly entered and robbed a private entrance which he had lawfully searched while on-duty earlier. (*Id.* at 11 (citing *Van Ort*, 92 F.3d at 838).) Plaintiffs distinguish the present matter from *Van Ort*, noting that a "public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (Doc. No. 21 at 14 (quoting *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015)).)

In the present matter, the actions alleged against Does are distinguishable from those in *Van Ort* in that all allegations made in the FAC were actions within the San Diego County Jail and were not outside the scope of "official capacity or while exercising his responsibilities pursuant to state law." *Paeste*, 789 F.3d at 1238. Indeed, Plaintiffs plead that Does 1 through 3 "sold or otherwise provided dangerous narcotic drugs . . . including methamphetamine and fentanyl" while Decedent "was still in-custody and still confined as a Pretrial Detainee at the San Diego County Jail[.]" (FAC ¶ 19.) Therefore, the fact that the Does' alleged actions are criminal in nature (either selling or facilitating the sale of illicit narcotics) does not necessarily preclude liability under Section 1983 because such actions were allegedly taken while Does were acting in their official capacity as employees/agents of the County.

///

### 1.    Dangerous Conditions of Confinement (Claim 1)

The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:

(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2) Those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

(4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015), and *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This test is often applied to a pretrial detainee's medical care claim under the due process clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied sub nom*. *Cnty. of Orange, Cal. v. Gordon*, 586 U.S. 1069 (2019).

Here, Plaintiffs allege Decedent ingested methamphetamine and fentanyl he obtained while incarcerated at San Diego County Jail either directly from Does or with their knowledge. (FAC ¶¶ 19–23.) Does allegedly did so "all while knowing that [Decedent] had been arrested for . . . possession of illicit narcotic drugs, . . . knowing that if offered or provided with access to dangerous and often deadly narcotic drugs . . . [Decedent] would take such illicit narcotic drugs[.]" (*Id.* ¶¶ 22–23.) Subsequently, Does allegedly conducted jail cell safety checks where they saw Decedent collapsed in his jail cell and writing on his jail cell floor for several hours, in obvious severe medical distress.

(*Id.* ¶ 27.) Due to this inaction, the FAC concludes Decedent suffered severe pre-death pain and suffering, mental and emotional injuries, and other general and special damages, as well as his death on May 5, 2022. (*Id.* ¶ 29.) Plaintiffs allege these "conditions of confinement . . . constitutes conduct by defendants DOES 1 through 6, inclusive, that was done maliciously and in reckless disregard" of Decedent's constitutional rights. (*Id.* ¶ 31.)

The County first argues Plaintiffs' claim lacks sufficient facts "to pinpoint any specific event or alleged wrongdoer[,]" thereby failing to fairly notify the County of the factual claims against it." (Doc. No. 19-1 at 12.) Specifically, the County asserts that "without the barest factual allegations connecting an unnamed person to a specific event, the FAC fails to provide fair notice." (*Id.*) Plaintiffs respond that the facts alleged in the FAC are sufficient to state a Fourteenth Amendment claim for failure to protect because they meet all four of the elements outlined in *Castro*, 833 F.3d 1060. (Doc. No. 21 at 12–13.)

The Court finds the Complaint sufficiently alleges that the County and Does engaged in specific acts that failed to protect Decedent from a dangerous condition of confinement. *See Est. of Escobar v. United States*, No. 20-cv-2454-L-KSC, 2022 WL 3209380, at *5–6 (S.D. Cal. Aug. 8, 2022). These "allegations are sufficient for purposes of the present motion to put the parties on notice, and for parties[] to undertake [an] investigation to determine who engaged in the conduct alleged, and when it occurred, if at all." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Indeed, the FAC alleges Does 1 through 6 failed to take reasonable measures to address the distribution of narcotic drugs, whether by Does themselves or other inmates. (FAC ¶¶ 19–22, 25.) Moreover, while the County argues the FAC fails to provide fair notice because Plaintiffs connect the factual allegations to "an unnamed person," this issue was addressed in the Court's previous Order on the County's motion to dismiss Plaintiffs' original Complaint. There, this Court found "the Complaint sufficiently alleges that Defendant County and Does engaged in specific acts that impacted Decedent." (Doc. No. 17 at 4.)

Accordingly, the Court **DENIES** the County's motion to dismiss Plaintiffs' first

claim.

## 2.    Denial of Medical Care (Claim 2)

Claims for denial of medical care for individuals injured in police custody are analyzed under the Fourteenth Amendment. Under the Fourteenth Amendment, Plaintiffs must establish that the officers acted with "deliberate indifference," and Plaintiffs must establish the four *Castro* elements above in order to show deliberate indifference in this context. *See Gordon*, 888 F.3d at 1124–25.

Plaintiffs assert, in addition to the facts stated above, that on May 5, 2022, after Decedent ingested methamphetamine and fentanyl, Doe Defendants "did their jail cell safety checks at the jail, and saw . . . decedent . . . collapse and/or collapsed in his jail cell, in obvious severe medical distress from overdosing on the methamphetamine and fentanyl distributed to" Decedent. (FAC ¶ 40.) Does thus knew Decedent "faced a substantial risk of suffering serious and severe medical harm, as well as facing a serious medical need[.]" (*Id.* ¶ 41.) Moreover, Does watched Decedent "collapse and/or collapsed in his jail cell, and watched . . . [him] writhe on his jail cell floor for several hours, in obvious acute severe medical distress, to the point of his obviously being in medical extremis." (*Id.* ¶ 42.) As a result, Decedent suffered from an overdose and "suffer[ed] in tremendous physical, mental and emotional pain, suffering and distress for several hours, until he ultimately died on May 5, 2022." (*Id.* ¶ 43.)

The County argues Plaintiffs' second claim should be dismissed because the "allegations fail to allege enough descriptive facts to identify a specific event, depriving the County of fair notice." (Doc. No. 19-1 at 14.) The County also asserts this second claim is duplicative of the first, and should thus be dismissed. (*Id.*) Plaintiffs respond that the facts alleged meet the *Castro* standard for a pretrial detainee's medical care claim and, thus, the County's motion should be denied. (Doc. No. 21 at 15–16.)

The County relies on *J.K.J. v. City of San Diego*, No.: 19-CV-2123-CAB-RBB, 2020 WL 738178 (S.D. Cal. Feb. 13, 2020), in which the court analyzed the *Castro* elements under the plaintiff's claim for unreasonable search and seizure – denial of medical care.

8

2020 WL 738178, at *6–7. The court ultimately dismissed this claim under the third *Castro* factor because the complaint did not sufficiently allege a serious medical need based on what the officers knew at the time. *J.K.J.*, 2020 WL 738178, at *7. However, the County makes no arguments as to the third factor here. (*See* Doc. No. 19-1 at 13–14.)

The Court finds the FAC sufficiently alleges deliberate indifference. Plaintiffs allege Does made several decisions regarding Decedent's confinement conditions by either selling or providing Decedent with narcotics, or otherwise failing to prevent other inmates from selling or distributing narcotics. (FAC ¶¶ 19–22.) They then ignored Decedent during their jail safety checks, despite seeing Decedent collapsed in his jail cell and writhing for several hours in acute medical distress. (*Id.* ¶¶ 40, 42.) By allegedly leaving Decedent in the cell for hours while visibly suffering from an overdose that a reasonable person would have known required medical treatment, (*id.* ¶ 45), Plaintiffs argue Does did not take reasonable measures to abate that risk. Plaintiffs allege Does' failure to provide medical care resulted in Decedent's pain and suffering, and ultimately his death. (*Id.* ¶ 46.)

The Court further finds the second claim is not duplicative of the first; Does allegedly failed to provide medical care to Decedent while he was in obvious medical distress, resulting in his death. This differs from Plaintiffs' first claim that Does allegedly created dangerous conditions of confinement by providing illicit narcotics or allowing other inmates to provide narcotics to Decedent.

Accordingly, the Court **DENIES** the County's motion to dismiss the second cause of action.

### 3.    State Created Danger (Claim 3)

Next, the County argues that "[g]overnmental failure to protect an individual against private violence ordinarily does not violate the guarantee of due process, but it can do so when government action 'affirmatively place[s] the plaintiff in a position of danger[.]'" (Doc. No. 19-1 at 15.) The County argues that "jailing the Decedent put him in no *new* danger of overdosing on narcotics in any other place" because Decedent was a narcotics user. (*Id.* at 16.) Additionally, the County argues that Plaintiffs' third claim for state created

9

danger should be stricken as duplicative of the first claim. (*Id.* at 15.) Plaintiffs respond that the cases cited by the County do not support their argument. (Doc. No. 21 at 19.) Further, Plaintiffs argue that it is "pure conjecture from Defendants" that Decedent faced the risk of overdose from fentanyl that he would not have otherwise faced. (*Id.*)

To prevail on a state-created danger claim, "the plaintiff must show that the state official[s] participated in creating a dangerous condition, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *See L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). Plaintiffs allege that Does provided illicit narcotics (or allowed illicit narcotics to be provided) to Decedent, which he ingested and subsequently overdosed, causing his death. (FAC ¶¶ 52–56, 58.)

The Court finds Plaintiffs' third claim is duplicative of their first and second claims, as this claim asserts Does created a dangerous condition by either providing drugs to Decedent or failing to prevent other inmates from providing said drugs, and were deliberately indifferent to Decedent's serious medical needs. (*See* FAC ¶¶ 52–56, 59–64.) Accordingly, Plaintiffs' third claim is **DISMISSED WITH LEAVE TO AMEND**.

### 4. Interference with Familial Relationship (Claim 4)

Plaintiffs' Fourth Cause of Action is for interference with a familial relationship under the Fourteenth Amendment based on Decedent's relationship with both Decedent's minor child, A.N.Y., and Decedent's mother, Young. (FAC ¶¶ 68–87.) The County argues Plaintiffs lack standing to bring a claim for loss of familial association because Plaintiffs have failed to allege sufficient facts to support a constitutionally protected relationship. (Doc. No. 19-1 at 17.) Plaintiffs argue that relationships between parents and children are of a special class where the Court would "presuppose deep attachments and commitments." (Doc. No. 21 at 17 (quoting *Mann v. City of Sacramento*, 748 Fed. App'x 112, 112 (9th Cir. 2018)).)

"A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) (citing *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229–

30 (9th Cir. 2013), and *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 369–70 (9th Cir. 1998)). "In the context of parent-child relationships specifically, the Supreme Court has emphasized that the rights of parents are a counterpart of the responsibilities they have assumed: 'the mere existence of a biological link does not merit equivalent constitutional protection.'" *Id.* at 1058 (quoting *Lehr v. Robertson*, 436 U.S. 248, 256–58 (1983)). Rather, to merit constitutional protection, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities[.]" *Id.*

Here, Plaintiffs A.N.Y. and Young do not adequately plead a right to familial association. The FAC alleges only that minor plaintiff A.N.Y. is the successor-in-interest to his father, Decedent, and that Plaintiff Young is the natural and legal mother of Decedent. (FAC ¶¶ 5, 6.) Courts have found this insufficient to plead a right of familial association. *See Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044 (N.D. Cal. 2022) ("But the mere label of 'spouse' or 'biological father' alone is insufficient to plead a right of familial association."); *Est. of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1215 (E.D. Cal. 2019) (finding plaintiffs had insufficiently pled standing to bring familial association claims for decedent's father, brothers, aunt, grandmother, and grandfather where complaint only used perfunctory language that "he or she 'cohabitated' with [decedent] and 'shared a close relationship and special bond' with him, and that the relationship 'presupposed deep attachments, commitments, and distinctively personal aspects of their lives'"); *Sandoval ex rel. B.U. v. City of National City*, No.: 22CV1657-GPC(AGS), 2023 WL 3295590, at *7 (S.D. Cal. May 5, 2023) (dismissing Fourteenth Amendment claim based on familial relationship where "the FAC only alleges that B.U. is the decedent's child and provides no other facts as to the decedent's parental role in B.U.'s life").

Thus, the Court **GRANTS** the County's motion to dismiss Plaintiff's Fourth Cause of Action for interference with a familial relationship **WITH LEAVE TO AMEND**.

### 5. Deprivation of Life Without Due Process of Law (Claim 5)

Next, the County argues Plaintiffs' fifth claim includes conclusory allegations that

11

Does acted with deliberate indifference, resulting in Decedent's death. (Doc. No. 19-1 at 23.) Plaintiffs respond they have pled their claim with sufficient specificity in the FAC. (Doc. 21 at 20.) Both parties agree the "deliberate indifference" standard must be met for this claim. (Doc. No. 19-1 at 23; Doc. No. 21 at 20.)

To state a substantive due process claim based on a state-created danger, a plaintiff must establish three elements: (1) "that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced"; (2) "that the injury she suffered was foreseeable"; and (3) "that the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). Deliberate indifference requires that the official "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it." *Patel v. Kent School Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (quoting *L.W.*, 92 F.3d at 900).

Plaintiffs' FAC alleges Does acted with deliberate indifference by facilitating the possession of dangerous illicit narcotics to Decedent, "knowing that [he] had been arrested for, *inter alia*, possession of illicit narcotic drugs, that he was a frequent drug user and/or addict, and knowing that if offered or provided with access to dangerous and often deadly illicit narcotic drugs [. . .] that [he] would take such illicit narcotic drugs, placing him in great danger of [death by overdose]." (FAC ¶ 99.) Further, Plaintiffs allege Decedent "faced a substantial risk of serious harm as well as facing a serious medical need" due to the alleged actions of Does. (*Id.* ¶ 101.) Does allegedly "knew of and disregarded [this risk] by failing to take reasonable measures to address it." (*Id.* at ¶ 102.) Indeed, as discussed above, Plaintiffs plead that Does "stood-by and watched" while Decedent "collapsed in his jail cell while squirming and writhing on his jail cell floor for several hours and took no actions to attend to [Decedent's] obvious need for immediate medical care or to get/summon[] immediate medical care[.]" (*Id.* ¶ 97; *see id.* ¶ 103.)

The Court finds Plaintiffs allege facts sufficient to demonstrate deliberate indifference by Does. Thus, the Court **DENIES** the County's motion to dismiss the Fifth Cause of Action.

### B.  *Monell* Claim (Claim 6)

Cities, counties, and other local government entities are subject to claims under Section 1983. *Monell v. Dept of Social Serv. of the City of New York*, 436 U.S. 658 (1978). While municipalities, their agencies, and their supervisory personnel cannot be held liable under Section 1983 on any theory of *respondeat superior* or vicarious liability, they can be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691–93. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Id.* at 694.

Three separate theories of *Monell* liability may be alleged against a municipality: (1) an unconstitutional policy, custom, or practice; (2) inadequate training; and/or (3) ratification. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018). "First, a local government may be liable if 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury.'" *Id.* (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 309 (1989)). "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2018)).

Plaintiffs allege *Monell* liability under the theories of: (1) policy created by longstanding custom and practice, and (2) failure to train jail personnel. (FAC ¶¶ 107–53.) ///

13

### 1.    Longstanding Custom and Practice

The County asserts Plaintiffs' sixth claim "alleges that the identities of Doe defendants including the 'Sheriff of the County of San Diego' and the 'Members of the Board of Supervisors of San Diego County' are 'presently unknown to plaintiff.' Such allegations strain the limits of credibility." (Doc. No. 19-1 at 24.) The County asserts these names are widely publicized and are commonly available to anyone. (*Id.*) Further, the County argues Plaintiffs' claim against Does 7 through 10 are duplicative of their allegations against the County and is therefore unnecessary to municipal liability. (*Id.* at 25.) Finally, the County contends Plaintiffs' FAC fails to contain sufficient allegations to support their claim. (*Id.*)

To establish liability on the part of governmental entities based on an unconstitutional policy or custom, a plaintiff must allege: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 389–90). In addition, a local governmental entity may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. *Id.*; *see City of Canton*, 489 U.S. at 388; *see also Monell*, 436 U.S. at 690–91. The custom or policy of inaction, however, must be the result of a "conscious," *City of Canton*, 489 U.S. at 393, or "deliberate choice to follow a course of action [that is] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question[,]" *Oviatt*, 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). *See Sandoval*, 2023 WL 3295590, at *9.

Absent a formal governmental policy, the plaintiff must show a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting

23-cv-01622-AJB-SBC

*Pembaur*, 475 U.S. at 485). The practice must be so "persistent and widespread" that it constitutes a "permanent and well settled" custom or usage. *Monell*, 436 U.S. at 691.

Plaintiffs have not identified a formal policy of the County but allege a practice or custom. (*See* FAC ¶¶ 132–49.) To allege a longstanding practice or custom which constitutes the standard operating procedure of a local government entity, Plaintiffs must allege more than a single, isolated incident. *See Meehan v. Los Angeles Cnty.*, 856 F.2d 102, 107 (9th Cir. 1988) (finding two incidents were insufficient to establish *Monell* custom); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 943 (S.D. Cal. 2022) (granting motion to dismiss *Monell* claim based on single instance of alleged unconstitutional conduct); *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1016 (C.D. Cal. 2022) (granting motion to dismiss *Monell* claim based on policy, practice, or custom because the complaint only described one incident of unconstitutional activity which is not sufficient to impose liability under *Monell*).

The FAC alleges Decedent was subject to "unconstitutional actions" by the creation of "policies, practices, customs and/or usages of the County of San Diego" for (1) "condoning and/or otherwise failing to prevent its [officers] from bringing dangerous narcotic drugs [] into the San Diego County Jails [] for sales and distribution to inmates at those jail facilities[;]" (2) "failing to provide medical care to jail Inmates[;]" and (3) "failing to discipline officers who do not provide medical care to inmates[.]" (FAC ¶ 13(a), (d), (e).) Does' alleged actions placed Decedent "in a position of an actual, particularized danger by creating or exposing [Decedent] to a danger that he would not have otherwise faced" by either: (1) directly providing Decedent with illicit narcotics while in custody, or (2) indirectly providing Decedent illicit narcotics while in custody by permitting transactions of illegal narcotics by inmates. (*Id.* ¶¶ 110–11.) Plaintiffs allege that such actions of Does were done knowing that Decedent was arrested for possession of illicit narcotic drugs, was a frequent user of such substances, and that Decedent was "in great danger of dying from using / taking such illicit narcotic drugs." (*Id.* ¶ 111.) Plaintiffs allege Does 7 through 10, inclusive, are supervisors and policy-making officials employed by the

15

County "whose actions and/or omissions proximately caused some of all of the tortious actions complained of in this action[.]" (*Id.* ¶ 132.)

Moreover, Plaintiffs' FAC alleges that Does 7 through 10 "are final policymaking officials for the San Diego County Sheriff's Department and the County of San Diego" and "formulat[ed] and created, and permitted and caused the creation of those policies, customs and practices of the San Diego County Sheriff's Department, including all jail policies." (FAC ¶¶ 133–34.) Plaintiffs further assert:

> Said defendants have known for many years now that deputy sheriffs at the San Diego County Jails, sheriff's aides at the San Diego County Jails, the Correctional Officers and Deputy Sheriffs at the San Diego County Jails, and other jail personnel at the San Diego County Jails, have sold and/or distributed, and/or otherwise facilitated the sale and/or distribution of, and/or have otherwise condoned and/or permitted inmates to sell and/or distribute, dangerous illicit and narcotic drugs, including methamphetamine, heroin and fentanyl, to inmates at the San Diego County Jails, including the San Diego County Jail, Central Jail Facility.

(*Id.* ¶ 135.) Indeed, "many San Diego County Jail inmates have died from the ingestion of such dangerous illicit and narcotic drugs." (*Id.* ¶ 136.) "San Diego County Jail personnel, DOES 7 through 10, inclusive, and their predecessors in office have covered-up the role of San Diego County Jail personnel in the deaths of inmates who died from taking illicit and dangerous drugs." (*Id.* ¶ 137.) The FAC goes on to allege that various employees of the County have been selling, distributing, or otherwise facilitating the sale of illicit narcotic drugs to inmates in the San Diego County Jails, in turn creating a longstanding custom and practice of San Diego County Jails personnel. (*Id.* ¶ 138.) The FAC then provides several sources in support, including the California State Auditor's February 2022 report which details that between 2020 and 2021, there were 314 opioid overdoses in the San Diego County Jails. (*Id.* ¶ 139 (citing *San Diego County Sheriff's Department: It Has Failed to Adequately Prevent and Respond to the Deaths of Individuals in Its Custody*, Auditor of the State of California (Feb. 3, 2022) (https://information.auditor.ca.gov/pdfs/reports/2021-109.pdf)); *see also id.* ¶¶ 140–41

16

(Analytica Consulting, *2022 San Diego County In-Custody Death Study*, Citizens Law Enforcement Review Board (April 2022) (https://www.sandiegocounty.gov/content/dam/sdc/clerb/meetings/2022/Att.G-CLERB%20In-Custody%20Death%20Study.pdf); *id.* ¶ 142 (detailing "significant deficiencies in the Sheriff's Department's policies and procedures likely contributed to the deaths of individuals in its custody); *id.* ¶ 143 ("On October 27, 2023, the County of San Diego Citizens' Law Enforcement Review Board Sustained the allegation that the San Diego County Jail failed to prevent the death of a James Bousman, by adhering to its failed policies that permitted fentanyl to be obtained by him, and that resulted in his drug overdose and death."). Further, Plaintiffs allege it is San Diego County Sheriff's Department policy to not screen its own jail deputy sheriffs and other custodial personnel for drugs when entering the San Diego County Jail facilities, resulting in personnel bringing narcotics into the jail facility. (*Id.* ¶ 144–46.)

Based on the above allegations, the Court first finds Plaintiffs' claim against Does 7 through 10 are not duplicative of their allegations against the County. Indeed, Plaintiffs allege Does 7 through 10 "are supervisors and policy-making officials," including various Sheriff's Department employees, supervisory personnel employed by the County, members of the Board of Supervisors, and other County officials. (*Id.* ¶ 10.)

Next, Plaintiffs list the Sheriff of the County of San Diego and the members of the Board of Supervisors of the County of San Diego as "Does" and assert they are "presently unknown to plaintiff." (*Id.*) The County asserts the names of these Does are widely publicized and are commonly available to anyone. (Doc. No. 19-1 at 24.) "It is permissible to use Doe defendant designations to refer to defendants whose names are *unknown* to plaintiff in the complaint." *Hatcher v. Ahern*, No. C 07–5779 SI (pr), 2008 WL 683385, at *1 (N.D. Cal. Mar. 12, 2008) (emphasis added). "Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process in this action until they are identified by their real names." *Id.* Because several of the Doe

Defendants are readily identifiable, the Court **ORDERS** Plaintiffs to file a timely amended complaint naming these Doe Defendants.

Finally, while the County contends that comparisons of overdose death rates between different jail systems "say[s] nothing about official governmental policy or custom[,]" the Court finds this argument inappropriate at the motion to dismiss stage. The Court ultimately finds Plaintiffs' FAC alleges more than a single incident, including Decedent's death, in support of San Diego County's alleged custom or practice. Thus, the motion to dismiss this claim is **DENIED**.

### 2.    Failure to Train

Courts permit *Monell* claims to proceed against municipalities under failure to adequately train theories "[i]n limited circumstances, [where] a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Keith v. City of San Diego*, No. 22-cv-1226-MMA (DEB), 2023 WL 2347070, at *3 (S.D. Cal. Mar. 3, 2023) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). In such cases, plaintiffs are required to show the municipality's allegedly inadequate training amounts to "deliberate indifference"—which is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* Because there is no vicarious or *respondeat superior* liability for municipalities under Section 1983, a *Monell* claim will only lie where policymakers were "on actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Id.* Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.*

However, in some "narrow" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a [municipality] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. Such "narrow" circumstances exist when, "in light of the duties assigned to specific officers or

employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Yet, courts are understandably hesitant to find such "narrow" circumstances, because such theories often "collapse[] into *respondeat superior* liability"—which plainly does not exist under Section 1983. *Horton by Horton v. Cnty. of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019).

The FAC alleges Does 7–10 failed to train its officers "how and when to provide medical care to jail [i]nmates" and "to immediately summon medical care for inmates who are suffering from severe medical distress." (FAC ¶ 148.) Does 7–10 allegedly failed to train its officers "adequately on recognizing when jail inmates are suffering from severe medical distress that requires immediate medical attention and care, and [. . .] to immediately summon medical care for inmates who are suffering from severe medical distress from drug overdoses[.]" (*Id.* ¶ 149.) Moreover, the Plaintiffs' failure to train claim is predicated upon the same reports as cited above. (*See id.* ¶¶ 139–46.)

Here, the factual allegations taken as true for the purposes of deciding this motion point to specific prior incidents indicating a pattern of conduct representative of a failure to train and/or a long-standing custom or practice within San Diego County Jail facilities by Doe Defendants who have authority to implement policies that would allow for the investigation of officers who may be selling drugs, or provide training to officers to respond to inmates experiencing medical emergencies/drug overdoses. Accordingly, the Court **DENIES** the County's motion to dismiss the Sixth Cause of Action.

## C.    State Law Negligence Claims (Claims 7–9)

The FAC pleads Claims 7, 8, and 9 as distinct state law claims. Claim 7 is for wrongful death under California Code of Civil Procedure § 377.60. To state a claim under this statute, a plaintiff must allege facts showing that the defendant's wrongful or negligent conduct caused the decedent's death. *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). "Its purpose is to compensate . . . heirs for the loss of companionship

19

and for other losses suffered as a result of a decedent's death." *Id.* Claim 8 is for negligence, which requires allegations that the defendant breached a duty of care to the plaintiff and thereby caused an injury. *See Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). Claim 9 is styled as a failure to provide medical care claim under California Government Code section 845.6 claim. However, all of these claims assert negligence against the County and Does 1–10 for all of the same conduct outlined above. (See FAC ¶¶ 165–68, 188–93, 208–11.) As such, the Court addresses these claims together.

### 1. Standing

The FAC states "plaintiffs A.N.Y. and YOUNG suffered severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and their Parent – Child relationship with [Decedent], as well funeral and burial expenses, hospital and other special damages, including the financial and emotional support that [Decedent] would have given to them[.]" (FAC ¶ 175.)

The County first argues the wrongful death claim is brought only by minor Plaintiff A.N.Y. but the FAC then alleges losses and expenses incurred by Decedent's mother, Young. (Doc. No. 19-1 at 27.) Plaintiffs make no argument in response. (*See generally* Doc. No. 21 at 27–31.) Moreover, even if Young had been included in this claim in the FAC, Plaintiffs fail to plead Young was dependent on Decedent for the "necessaries of life." *See Chavez v. Carpenter*, 91 Cal. App. 4th 1433, 1446 (2001). Accordingly, the County's motion to dismiss the wrongful death claim as to Plaintiff Young is **GRANTED WITH LEAVE TO AMEND**.

Next, the County asserts there is no allegation that A.N.Y. was Decedent's dependent for financial support. (*Id.* at 27–28.) Plaintiffs respond that under California Code of Civil Procedure Section 377.60(a), A.N.Y. has standing as Decedent's child. (Doc. No. 21 at 30.)

"In California, wrongful death actions are statutory in origin and exist only so far and in favor of such person as the legislative power may declare." *Ceja v. Rudolph & Sletten, Inc.*, 56 Cal. 4th 1113, 1118 (2013) (internal quotation marks and citation omitted).

"The right to bring a wrongful death action is limited to those persons described in . . . section 377.60" and is "strictly construed." *Soto v. BorgWarner Morse TEC Inc.*, 239 Cal. App. 4th 165, 188 (2015) (citation omitted). "A plaintiff seeking to bring a wrongful death claim bears the burden of pleading and proving his or her standing to do so." *Id.* at 188 (citation omitted).

Section 377.60 provides,

A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession. If the parents of the decedent would be entitled to bring an action under this subdivision, and the parents are deceased, then the legal guardians of the decedent, if any, may bring an action under this subdivision as if they were the decedent's parents.

(b)(1) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, parents, or the legal guardians of the decedent if the parents are deceased.

Cal. Civ. Proc. Code § 377.60.

Unlike § 377.60(b), § 377.60(a) does not require that a child be financially dependent on the decedent. *See* Cal. Code Civ. P. § 377.60(a). Therefore, it is irrelevant whether A.N.Y. depended on Decedent for financial support. Accordingly, the County's motion to dismiss on this ground is **DENIED**.

### 2. 12(b)(6)

Plaintiffs allege the County and Does breached their duty of care owed to Decedent by (1) facilitating the possession of illicit narcotics, (2) failing to summon immediate medical care, (3) negligently failing to competently investigate jail deaths, and

21

(4) negligently failing to train personnel to recognize when inmates are suffering from extreme medical distress that requires immediate medical attention. (*Id.* ¶¶ 168–74, 189–93.)

The County argues Plaintiffs' wrongful death and negligence claims fail to state a claim because they fail to adequately allege an underlying California law basis for liability for Decedent's death. (Doc. No. 19-1 at 28.) Specifically, the County argues "the FAC does not allege an event involving an otherwise-identifiable 'Doe' with any factual specificity, so it fails [to] plead a negligence claim against an individual County employee." (*Id.* at 29.)

As an initial matter, Plaintiffs identify only one named defendant, Navarro, allegedly involved with Decedent's receipt of illicit narcotics while in custody. (FAC ¶ 185.) However, Navarro is not named as a defendant, and is not otherwise identified in the FAC. (*See generally id.*)

Section 377.60 of the California Code of Civil Procedure provides that certain surviving persons (including parents) may file a civil suit against those responsible for a decedent's "wrongful or negligent" death. *Patino v. Cnty. of Monterey*, Case No. 22-cv-01564-BLF, 2023 WL 375349, at *6 (N.D. Cal. Jan. 24, 2023) (citing *Quiroz*, 140 Cal. App. 4th at 1263). Section 1714 of the California Civil Code is the "general tort provision[]" in California setting forth that each person has "a legal duty to act reasonably and with due care under the circumstances with respect to their own actions"—i.e., to not act negligently. *Summerfield v. City of Inglewood*, 96 Cal. App. 5th 983, 999 (2023); *Shalghoun v. N. Los Angeles Cnty. Reg'l Ctr., Inc.*, 99 Cal. App. 5th 929, 944 (2024), *as modified on denial of reh'g* (Feb. 22, 2024), *review filed* (Mar. 5, 2024). Section 820 of the California Government Code clarifies that this general duty of care extends to public employees "to the same extent as a private person." And, under California Government Code section 815.2, "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."

However, California Civil Code section 1714 's general duty of care and California Government Code section 815.2's subsequent vicarious liability provisions are partially modified by section 844.6 of the California Government Code, which states that public entities are not liable for "injury to a prisoner." California Government Code section 844.6 goes on to clarify that "[n]othing in this section exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6 (emphasis added). This provision is partially modified by section 845.6 of the California Government Code, which states that "a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody"—but that a "public employee, and the public entity where the employee is acting within the scope of his employment, *is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care*." Cal. Gov't Code § 845.6 (emphasis added).

Taken together, this California statutory scheme stands for the proposition that: (1) public entities cannot be held liable for wrongfully or negligently injuring prisoners[1] but public employees can be[2]; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public employee or public entity are liable)[3]; except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable)[4].

Accordingly, Claims 7, 8, and 9 must be **DISMISSED WITH PREJUDICE** against the County with respect to: (a) the theory that Does either provided or failed to prevent

---

[1] Cal. Gov. Code § 844.6.
[2] *Id.*; Cal. Gov. Code § 820.
[3] Cal. Gov. Code § 845.6.
[4] *Id.*

inmates from providing Decedent with narcotics; (b) the related failure to discipline/terminate jail staff theory; and (c) the failure to adequately train jail staff theory because they attempt to hold the County liable for the allegedly wrongful and/or negligent death of Decedent in violation of section 844.6 of the California Government Code. *Bousman v. Cnty. of San Diego*, No.: 3:23-cv-1648-W-JLB, 2024 WL 1496220, at *11 (S.D. Cal. Apr. 5, 2024). However, Claims 7–9 proceed against the County, insofar as it would be vicariously liable for Does 1–10's alleged failure to reasonably summon immediate medical care under California Government Code section 845.6.

Indeed, the FAC sufficiently states a claim for wrongful death under California Code of Civil Procedure § 377.60, negligence under California Code of Civil Procedure § 1714, and failure to summon immediate medical care under California Government Code § 845.6. It alleges: Decedent was in the custody of the County at the time of his death, (FAC ¶¶ 155–56, 179–80); County employees owed Decedent a duty of care (*id.* ¶ 189); and Decedent was harmed while in the custody of the County by the use of dangerous narcotic drugs (*id.* ¶¶ 171, 188). The FAC then alleges that County employees breached their duty of care to Decedent by being "deliberately indifferent" and "took no actions" to address Decedent's "obvious need for immediate medical care[.]" (*Id.* ¶¶ 170, 174, 190.) The FAC alleges the lack of medical care was "a proximate cause of the death of" Decedent, and that this injury caused Plaintiff A.N.Y. to suffer "severe mental and emotional distress, pain and suffering, and the loss of the love, comfort, society, companionship and her Parent – Child relationship[.]" (*Id.* ¶¶ 194–95.) The Court finds these allegations are sufficiently clear, specific and factual to state "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, the motion to dismiss is **DENIED** as to the negligence, wrongful death, and failure to summon immediate medical care claims to the extent they are based on a failure to summon immediate medical care.

///

///

///

24

**IV.    CONCLUSION**

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the County's motion to dismiss. (Doc. No. 19.) Should Plaintiffs choose to do so, where leave is granted, they must file a second amended complaint curing the deficiencies noted herein by <u>**December 10, 2024**</u>. Defendant must file a responsive pleading no later than <u>**December 27, 2024**</u>.

**IT IS SO ORDERED.**

Dated:  November 26, 2024

Hon. Anthony J. Battaglia
United States District Judge

23-cv-01622-AJB-SBC