UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS BARNABA as guardian ad litem for minor plaintiff and successor-in-interest A.N.Y. and YVETTE YOUNG,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, KELLY MARTINEZ, THERESA ADAMS-HYDAR, WILLIAM GORE, ERIKA FRIERSON and DOES 1 through 6, inclusive,<br><br>Defendants. | Case No.: 23-cv-01622-AJB-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>**(Doc. No. 61)** |

Before the Court is the County of San Diego (the "County"), Kelly Martinez, Theresa Adams-Hydar, Williams Gore, and Erika Frierson's (the "Individual Defendants") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC").[1] (Doc. No. 51.) The Motion is fully briefed. (Doc. Nos. 63; 66.) For the reasons

---

[1] Anthony Ray and Mike Barnett were dismissed from this case on July 24, 2025, and August 4, 2025, respectively, and are not defendants in this case. (Doc. Nos. 50 at 5; 54.)

1

stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

## I.    BACKGROUND

### A.    Factual History

This case arises out of the death of Chaz Guy Young-Villasenor ("Decedent"). (Doc. No. 51 ¶¶ 23–33.) Plaintiffs, Decedent's mother and minor son, bring claims arising from his fatal drug overdose, which occurred on May 5, 2022. (*Id.* ¶ 7.) At the time of his death, Decedent was incarcerated as a pretrial detainee at the San Diego County Central Jail ("Central Jail"). (*Id.*)

Alexis Ann Barnaba, as guardian ad litem for minor child and successor-in-interest A.N.Y., and Yvette Young (collectively, "Plaintiffs") allege the staff at Central Jail knew Decedent was "arrested for, *inter alia*, possession of illicit narcotic drugs," and knew "he was a frequent illicit narcotic drug user and/or addict." (*Id.* ¶ 25.) Plaintiffs allege that while incarcerated, Decedent ingested a fatal amount of methamphetamine and/or fentanyl. (*Id.* ¶ 30.) As a result, Decedent "went into serious and obvious medical extremis in his jail cell," where he "squirm[ed] and writhe[d] on his jail cell floor for several hours." (*Id.* ¶ 33.) Decedent ultimately passed away from "an overdose of said methamphetamine and/or fentanyl" while in Central Jail. (*Id.*)

The TAC alleges the Individual Defendants were all supervisors and final policy-making officials for the County and were high-ranking officers and employees of the San Diego County Sheriff's Department (the "Sheriff's Department"). (*Id.* ¶ 139.) Plaintiffs allege Defendant Martinez was the Undersheriff for the Sheriff's Department and Defendant Adams-Hydar was the Assistant Sheriff overseeing Detention Services; a post which she occupied from February 2022 until March 2024. (*Id.* ¶ 140.) Plaintiffs allege that in the years prior to Decedent's death, Defendant Gore was the Elected Sheriff of San Diego County and Defendant Frierson was the Assistant Sheriff overseeing Detention Services. (*Id.* ¶ 141.) Defendant Gore was the elected Sheriff of San Diego County from July 2009 until February 2022 and was the chief policy-making official for the Sheriff's

2

Department during that time. (*Id.* ¶¶ 12, 142.) Defendant Frierson was the Assistant Sheriff overseeing Detention Services from 2017 through February 2022 and was a policy-making official for the Sheriff's Department during that time. (*Id.* ¶¶ 13, 143.)

The TAC goes on to allege that the Individual Defendants "formulated, created, permitted and caused the policies, customs and practices of the San Diego County Sheriff's Office, including all policies regarding drug interdiction in San Diego County jails." (*Id.* ¶ 146.) The Individual Defendants "had the ability to make, enforce, and change drug interdiction policies in the [Sheriff's Office] jails." (*Id.* ¶ 147.) And the Individual Defendants "have known for many years now that deputy sheriffs at the San Diego County Jails . . . have sold and/or distributed . . . dangerous illicit and narcotic drugs, including methamphetamine, heroin and fentanyl, to inmates at the San Diego County Jails[.]" (*Id.* ¶ 148.) Finally, Plaintiffs allege the Individual Defendants have known for many years that deputy sheriffs at San Diego County Jails facilitated the distribution of illicit drugs to inmates, resulting in inmate deaths. (*Id.* ¶ 149.)

Based on these allegations, Plaintiffs bring eight causes of action against Defendants. (Doc. No. 51 ¶¶ 22–258.) Plaintiffs allege claims for federal civil rights violations under 42 U.S.C. § 1983 (claims 1–5) and state law claims for wrongful death, negligence, and failure to provide immediate medical care (claims 6–8). (*Id.*) Defendants move to dismiss portions of Plaintiffs' fifth, sixth, seventh, and eighth causes of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (*See generally* Doc. No. 61.)

**B.    Procedural History**

**1.    The Original Complaint**

Plaintiffs initiated this wrongful death lawsuit on September 1, 2023, against the County and Does 1–10. (Doc. No. 1.) On October 4, 2023, the County moved to dismiss the complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6). (Doc. No. 9.) On March 26, 2024, the Court issued an Order granting in part and denying in part the motion to dismiss with leave to amend. (Doc. No. 17.)

Relevant here, the Court denied the County's motion to dismiss under Rule 8(a) finding that "the Complaint sufficiently alleges that Defendant County and Does engaged in specific acts that impacted Decedent." (*Id.* at 4–5.)[2] The Court also denied the motion to dismiss the ten Doe defendants. (*Id.* at 6–7.) The Court granted the County's motion to dismiss Plaintiffs' Eighth Amendment claims. (*Id.* at 5.) Finally, the Court granted the motion to dismiss as to Plaintiffs' *Monell* claim and "Plaintiffs' negligence and wrongful death claims to the extent the claims are based on Defendant's alleged failure to investigate jail deaths, find the culpable state actors selling drugs, and train staff to recognize when inmates are in medical distress." (*Id.* at 10–12, 12–13.)

### 2.    The First Amended Complaint

On April 10, 2024, Plaintiffs filed the First Amended Complaint (FAC). (Doc. No. 18.) The County filed a motion to dismiss on April 24, 2024. (Doc. No. 19.) The FAC again alleged wrongful death and negligence claims against the County based on an alleged failure to "competently investigate jail deaths," find the culpable officers "selling and/or distributing" drugs, and "negligently failing to train" its officers to recognize when an inmate is "suffering from severe medical distress." (Doc. No. 18 ¶¶ 192–93.) The County moved to dismiss all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19.)

On November 26, 2024, the Court issued an Order granting in part and denying in part the County's Motion to Dismiss Plaintiffs' FAC. (Doc. No. 24.) The Court dismissed with prejudice Plaintiffs' wrongful death, negligence, and failure to summon immediate medical care claims against the County, except to the extent the County could be held "vicariously liable for Does 1–10's alleged failure to reasonably summon immediate medical care under California Government Code section 845.6." (*Id.* at 24.)

---

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

4

The Court further granted Plaintiffs leave to amend to address standing deficiencies, ordered Plaintiffs to identify readily identifiable Doe Defendants, and dismissed Plaintiffs' interference with familial relationship claim with leave to amend. (*Id.* at 11, 18, 20.)

### 3. The Second Amended Complaint

Plaintiffs filed the Second Amended Complaint ("SAC") on December 10, 2024. (Doc. No. 26.) Rather than substituting named defendants for the Doe Defendants, Plaintiffs added Defendants Anthony Ray, Kelly Martinez, Theresa Adams-Hydar, William Gore, Mike Barnett, and Erika Frierson. (*Id.* ¶¶ 10–15.) On February 26, 2025, Defendants filed a motion to dismiss the SAC. (Doc. No. 32.)

On July 24, 2025, the Court granted the motion in part and denied it in part. (Doc. No. 50.) There, the Court dismissed the Individual Defendants without prejudice, explaining that "instead of substituting six newly named defendants for the Doe Defendants, Plaintiffs added them." (*Id.* at 3.) The Court granted Plaintiffs leave to amend to substitute the newly named defendants for the Doe Defendants. (*Id.* at 4.)

### 4. The Third Amended Complaint

Plaintiffs filed the operative complaint Third Amended Complaint ("TAC") on July 31, 2025. (Doc. No. 51.) The TAC complies with the Court's prior directive to substitute newly identifiable defendants for the Doe Defendants. Specifically, Plaintiffs have substituted Defendants Kelly Martinez, Theresa Adams-Hydar, William Gore, and Erika Frierson for Does 7–10, respectively. (Doc. No. 51 ¶¶ 10−13.)

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead

sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). Thus, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000).

**III.    DISCUSSION**

Defendants argue that (1) Plaintiffs' fifth claim improperly alleges *Monell* liability against the Individual Defendants, (2) Plaintiff A.N.Y. fails to state a claim against the Individual Defendants for state law claims six through eight, and (3) Plaintiff A.N.Y. improperly alleges direct liability for their state law claims against the County without any statutory basis to do so. (Doc. No. 61-1 at 2.) Defendants also request to strike amendments that Plaintiffs allegedly made without leave of court. (*Id.* at 9.)

23-cv-01622-AJB-SBC

### A.    Defendants' Request to Strike Amendments

Defendants have not filed a motion to strike under Federal Rule of Civil Procedure 12(f). Rather, Defendants merely request that the Court strike "Plaintiffs' amendments brought without leave of Court and their references to Anthony Ray[.]" (Doc. No. 61-1 at 9.) The Court declines to do so.

Under Federal Rule of Civil Procedure 12(f), a court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f). The purpose of a "12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Courts have defined "'immaterial' as 'that which has no essential or important relationship to the claim for relief or the defenses being plead.'" *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (citation and internal quotation marks omitted). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1089 (9th Cir. 2025) (citation omitted). "Motions to strike are 'generally disfavored because they are often used as delaying tactics . . . .'" *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1004 (S.D. Cal. 2021) (quoting *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015)). "As such, 'motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Id.* (quoting *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

Where an amended pleading merely clarifies, restates, or cures defects without asserting new claims or materially altering the substance of the action, courts may permit the amendment if it does not prejudice the defendant. *See Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004) (citation omitted) (denying the defendants' motion to strike because "the allegations of the First Amended Complaint [were] largely identical to those found in the original Complaint" and finding that "plaintiffs['] inattention to procedural detail [did] not prejudice[] [the] defendants in any cognizable way"). "[I]t is the

7

consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Here, Defendants seek to strike paragraphs 28, 43, 66, 94, 120, 180–182, 185, 198, 202–203, and 216. (Doc. No. 61-1 at 9.) These paragraphs are mere restatements or clarifications of the preceding allegations in the TAC, adding no new claims, parties, or causes of action. Specifically, Paragraph 28 restates and clarifies Paragraph 27; Paragraph 43 restates and clarifies Paragraph 42; Paragraph 66 restates and clarifies Paragraph 65; Paragraph 94 restates and clarifies Paragraph 93; Paragraph 120 restates and clarifies Paragraph 119; Paragraph 180 clarifies Paragraph 151; Paragraph 181 clarifies Paragraph 155; Paragraph 182 clarifies Paragraphs 155 and 158; Paragraph 185 restates and clarifies Paragraph 155; Paragraph 198 restates Paragraph 197; and Paragraphs 202 and 203 are duplicative copies of each other that restate and clarify Paragraph 198. Paragraph 216 purports to assert a new category of damages. However, those damages appear elsewhere in the complaint in substantially similar form. (*See* Doc. No. 51 ¶¶ 37, 52, 110, 190, 216, 237, 258.) Accordingly, the amendment is more properly construed as a clarification or restatement of previously alleged damages rather than the introduction of a new theory of recovery.

A comparison to the SAC confirms these allegations are not new. (*See generally* Doc. No. 26.) The corresponding allegations in the SAC either appear in substantially similar form or are mere restatements and clarifications. (*See id.* ¶¶ 28, 43, 66, 93, 118, 147, 151, 154, 182.) Since the challenged amendments merely refine existing allegations and do not introduce new factual material or legal theories, Defendants are not placed on notice of anything new.

Courts also consider potential prejudice when deciding motions to strike, particularly in light of Rule 15(a)(2)'s instruction that leave to amend should be "freely given when justice so requires." *See* Fed. R. Civ. P. 15(a)(2); *see also Taheny v. Wells*

23-cv-01622-AJB-SBC

*Fargo Bank*, No. CIV. S-10-2123-LKK, 2011 WL 1466944, at \*2 (E.D. Cal. Apr. 18, 2011). Defendants offer no argument addressing prejudice or explaining why striking the amendments is appropriate. Because paragraphs 28, 43, 66, 94, 120, 180–182, 185, 198, 202–203, and 216 are mere restatements or clarifications of other allegations preceding them, and Defendants offer no cognizable argument to strike them, the Court will not strike these paragraphs.

Defendants also seek to strike Plaintiffs' references to Anthony Ray, who was previously dismissed from the action. (*See generally* Doc. No. 55 at 1 (redline version of the TAC reflecting Anthony Ray's removal as a defendant)). The dismissal of a defendant does not require that all references to that individual be removed from the complaint where those allegations provide factual background or context. *Butchers' Union, Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 631 F. Supp. 1001, 1012 n.6 (E.D. Cal. 1986) (noting that allegations referencing dismissed defendants "remain for factual background" even though the defendants were "no longer parties to [the] action"). "[A]llegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant . . . [and] [w]here allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). "Under the liberal federal pleading rules[,] notice and clarity of claims is all that is required." *Id.* (citing *Colaprico*, 758 F. Supp. at 1337).

Defendants fail to identify any reason why the specific material should be stricken and have not shown that Plaintiffs' references to Anthony Ray are immaterial, impertinent, or prejudicial. Accordingly, Defendants' request to strike the amendments is **DENIED**. The Court now turns to Defendants' remaining arguments.

### B.   Section 1983 Claim (Claim 5)

Defendants contend Plaintiffs' fifth claim impermissibly asserts *Monell* liability against the Individual Defendants. Defendants argue that the claims against the Individual Defendants in their official capacities are duplicative of the claims against the County.

9

(Doc. No. 61 at 2.) Plaintiffs respond that supervisory officials may be held liable under § 1983 in their individual capacities based on their own supervisory conduct, separate from municipal liability. (Doc. No. 63 at 3–4.)

### 1. Plaintiffs' Claims Are Not Duplicative

Defendants argue Plaintiffs' fifth cause action should be dismissed against the Individual Defendants because the "claim against the Individual Defendants in their official capacities . . . [is] duplicative of allegations made against the County" and is "barred by *Monell*." (Doc. No. 61-1 at 13.)

*Monell* liability is duplicative where "individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued." *Vance v. Cnty. of Santa Clara*, 928 F. Supp 993, 996 (N.D. Cal. 1996) (emphasis in original). This is because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 n.55 (1978). However, *Monell* liability is not duplicative "in a personal-capacity suit[] [where] the plaintiff is trying to place liability directly on the state officer for actions taken under the color of state law." *Vance*, 928 F. Supp. at 996.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection can be established "by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978). A supervisor may also be held liable as a supervisor under § 1983 for "setting in motion . . . acts which cause others to inflict constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Additionally, supervisors must

23-cv-01622-AJB-SBC

have actual supervisory authority over the government actor who committed the alleged violations. *See Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018).

Here, the TAC does not contain allegations against the Individual Defendants in their "official capacity." Indeed, Defendants' Motion to Dismiss does not point to a single allegation in the TAC claiming as much. Rather, Plaintiffs allege both *Monell* liability against the County, and supervisory liability under § 1983 against the Individual Defendants. (Doc. No. 51 ¶¶ 112–90.) This Court previously considered and permitted the *Monell* claims against the County to proceed under the theories of "unconstitutional policy, custom, or practice" and "inadequate training." (Doc. No. 24 at 13.) The Court also held that Plaintiffs' allegations against the Individual Defendants are "not duplicative of their allegations against the County" because Plaintiffs assert individual-capacity liability, alleging that Defendants acted as "supervisors and policy-making officials." (Doc. No. 24 at 17 (quoting Doc. No. 18 ¶ 10).) As discussed above, supervisory liability under §1983 is legally distinct from *Monell* liability. *Kentucky v. Graham*, 473 U.S. 159 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law . . . [o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'"). Although "[a] supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury[,] . . . this does not prevent a supervisor from being held liable in his individual capacity." *Larez*, 946 F.2d at 645.

Although Plaintiffs allege their municipal liability *Monell* claim and § 1983 supervisory liability claim within the same cause of action, the complaint distinguishes the two theories. (Doc. No. 51 ¶¶ 112–90.) Accordingly, the Court finds that Plaintiffs' § 1983 supervisory liability claim against the Individual Defendants is not duplicative of the claims against the County.

### 2. Sufficiency of Allegations Against the Individual Defendants

Defendants also argue "there are no allegations that any of the Individual Defendants

11

23-cv-01622-AJB-SBC

did anything to violate Decedent's constitutional rights, let alone specific allegations as to each Individual Defendant." (Doc. No. 61-1 at 12.) The Court disagrees.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 663. Rather, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (*Id.* at 676.) A "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights [and] [l]iability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

"A supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . . or for conduct that showed a reckless or callous indifference to the rights of others.'" *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (citation omitted). Supervisory liability may also arise from the implementation of "a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). Finally, a supervisor may also be liable where his or her "failure to train amount[s] to deliberate indifference." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), *abrogated on other grounds by Emp. Div., Dept. of Hum Res. of Or. v. Smith*, 494 U.S. 872 (1990).

Plaintiffs allege the Individual Defendants were "supervisory and final policy-making officials for [the Sheriff's Department]" and "had the ability to make, enforce, and change drug interdiction policies." (Doc. No. 51 ¶¶ 139, 147.) Plaintiffs also allege the Individual Defendants have "known for many years now" that "inmates in [jails] were overdosing on illicit dangerous drugs" and that officers at the Sheriff's Department were "selling and/or distributing, and/or otherwise facilitating the sale and/or distribution of, and/or have otherwise condoning and/or permitting inmates to sell and/or distribute, dangerous illicit and narcotic drugs, including methamphetamine, heroin and fentanyl, to

12

inmates[.]" (*Id.* ¶¶ 149, 184.) And that the Individual Defendants failed to "investigat[e] the identities" of the of the jail personnel who were responsible, and "covered-up" their roles. (*Id.* ¶ 150.)

Plaintiffs also allege that the Individual Defendants "failed to adequately train [officers] to make regular safety checks on jail inmates and [] to check on inmates incarcerated with drug offenses during shorter time periods between cell safety checks." (*Id.* ¶ 185.) Plaintiffs allege the Individual Defendants failed to train officers "to recognize when jail inmates are suffering from severe medical distress that requires immediate medical attention and care" and "to immediately summon medical care for inmates who are suffering from severe medical distress." (*Id.* ¶ 184.) And that the Individual Defendants "were deliberately indifferent to the obvious consequences of their failure to train" its officers. (*Id.* ¶ 186.)

Plaintiffs further allege that Defendants Kelly Martinez and Theresa Adams-Hydar "refused to take any steps" to change the Sheriff Department's policies, practices, or customs, and "deliberately disregarded the consequences" of their decisions. (*Id.* ¶¶ 174, 178.) Plaintiffs contend the Individual Defendants "refused to screen [officers] for illegal drugs," which "would have prevented such jail personnel from bringing illegal drugs into the [jails]." (*Id.* ¶ 181.) Finally, Plaintiffs allege that Defendants "deliberately disregarded the flow of dangerous drugs into the jails and illicit drug activity" by officers, "were deliberately indifferent to the obvious consequences of their failure to train" its officers, and that their actions and omissions "were a proximate cause" of Decedent's death. (*Id.* ¶¶ 179, 186, 188.)

These allegations are sufficient to plausibly establish that the Individual Defendants had supervisory authority over the personnel responsible for the alleged constitutional violations. *See Felarca*, 891 F.3d at 819. The TAC sufficiently pleads responsibility for the alleged unconstitutional policies and failures to each Individual Defendant, providing them with ample notice. Accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs plausibly allege that the Individual Defendants, through their own actions

and omissions, implemented or knowingly tolerated unconstitutional policies, customs, and training deficiencies. *See Hamby v. Scribner*, No. CVF046468OWWDLBP, 2006 WL 241491, at *4 (E.D. Cal. Mar. 15, 2006), *report and recommendation adopted in part*, No. 1:04CV6468 OWW-DLB-P, 2006 WL 680462 (E.D. Cal. Mar. 15, 2006) ("[A] plaintiff may show a prima facie case of supervisory liability by alleging that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights [or] knew of the violations and failed to act to prevent them[.]"). Plaintiffs' allegations are sufficient to establish a causal connection between the Individual Defendants' conduct and the alleged constitutional violation. Therefore, Plaintiffs' have sufficiently pleaded that a "culpable action, or inaction, is directly attributed" to the Individual Defendants. *See Starr*, 652 F.3d at 1205. Moreover, Plaintiffs adequately allege that the Individual Defendants, in their individual capacities as supervisors, were deliberately indifferent to known risks and personally failed to take corrective action, resulting in Decedent being subjected to unconstitutional conditions. Accordingly, the Court **DENIES** Defendants' motion to dismiss the Fifth Cause of Action as to the Individual Defendants.

### C. State Law Claims Against the Individual Defendants (Claims 6–8)

Next, Defendants contend Plaintiff A.N.Y. fails to state a claim against the Individual Defendants for state law Claims 6 through 8. (Doc. No. 61 at 2.) Plaintiff responds by pointing to the Court's prior order, in which the Court concluded that "the FAC sufficiently states a claim" for wrongful death, negligence, and failure to provide immediate medical care. (Doc. No. 63 at 8 (citing Doc. No. 24 at 24).)

#### 1. Negligence and Wrongful Death (Claims 6–7)

Plaintiff A.N.Y. brings a wrongful death claim under California Code of Civil Procedure § 377.60 and a negligence claim under California Civil Code § 1714. (Doc. No. 51 ¶ 217.) Defendants argue that "Plaintiff A.N.Y. cannot allege facts sufficient to establish a legal duty owed by the Individual Defendants to Decedent in their individual capacities." (Doc. No. 61-1 at 14.) Plaintiffs respond that the Court "already addressed these issues in

23-cv-01622-AJB-SBC

prior rulings, and Defendants simply seek to relitigate these issues now that 'doe' defendants have been named." (Doc. No. 63 at 9.) The Court disagrees.

Plaintiff A.N.Y. asserts that the law of the case doctrine bars this Court from reconsidering "the sufficiency of Plaintiffs' state law claims," citing the Court's prior ruling that the claims could "proceed against the County, insofar as it would be vicariously liable for Does 1–10's alleged failure to reasonably summon immediate medical care under California Government Code § 845.6." (*Id.* at 6, 8 (citing Doc. No. 24 at 24).) However, that ruling addressed the County and did not consider the applicability of § 845.6 to the Individual Defendants. Accordingly, the Court now addresses the sufficiency of Plaintiff's state law claims against the Individual Defendants.

To state a claim for wrongful death, "a plaintiff must allege facts showing that the defendant's wrongful or negligent conduct caused the decedent's death." *Patino v. Cnty. of Monterey*, No. 22-cv-01564-BLF, 2023 WL 375349, at *6 (N.D. Cal. Jan. 24, 2023). Because wrongful death is a derivative claim, it depends on the existence of an underlying tort, such as negligence. *See A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016 WL 5930592, at *5 (E.D. Cal. Oct. 12, 2016) (explaining that where "there is no negligence liability, . . . there can be no liability for wrongful death").

Under California Civil Code § 1714, "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person[.]" To state a claim for negligence, a plaintiff must allege (1) duty, (2) breach, (3) causation, and (4) damages. *See Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). A duty of care may arise from a special relationship. *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1254 (E.D. Cal. 2010) (citing *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 251–52 (2008). In the custodial context, the jailer-prisoner relationship is "the epitome of a special relationship, imposing a duty of care on a jailer owed to a prisoner." *Giraldo*, 168 Cal. App. 4th at 251–52. The special relationship between jailers and prisoners is equally applicable to officers of the law who take arrestees into custody. *Lum*, 756 F. Supp. 2d at

15

1254. This duty exists because "the [inmate] is particularly vulnerable and dependent" on the officer who "has some control over [their] welfare." *Kockelman v. Segal*, 61 Cal. App. 4th 491, 499 (1998). However, this duty does not automatically extend to high-level officials acting in policy-making roles. Courts have held that liability for such officials based on theories like negligent hiring, retention, or failure to train requires alleging a special relationship with the decedent. *See Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1182–83 (E.D. Cal. 2019) (finding that liability for "policy-making defendants . . . for negligent hiring, retention, and failure to train" depends on whether they "had a special relationship with the decedent"). To the extent that a plaintiff's theory depends on harm caused by a third party, liability requires a special relationship imposing a duty to control the third party or protect the plaintiff. *See Motley v. Smith*, No. 1:15-CV-00905, 2016 WL 3407658, at *10 (E.D. Cal. June 20, 2016).

Claim 6 alleges that Does 1–6 "sold or otherwise provided [Decedent] with dangerous narcotic drugs," knew that "inmates at the jail were providing . . . dangerous narcotic drugs to other inmates at the jail," and "were being paid . . . to permit certain inmates at the jail to sell and distribute said dangerous narcotic drugs at the jail."[3] (Doc. No. 51 ¶¶ 194, 195, 199.) The TAC also alleges that Does 1–6 conducted "jail cell safety checks at the jail, and saw [Decedent] collapse and/or collapsed in his jail cell, in obvious severe medical distress from overdosing on the methamphetamine and fentanyl," yet "failed to render any aid." (*Id.* ¶¶ 205, 208.) Among other things, Plaintiff also alleges that the "affirmative actions of defendants DOES 1 through 6 . . . created the actual, particularized danger to [Decedent]" and "caused . . . his ultimate death." (*Id.* ¶ 212.)

Claim 7 alleges that "DOES 1 through 6 . . . owed [Decedent] a duty to use reasonable care to summon immediate medical care" to Decedent and "breached their duty of due care . . . by distributing and/or allowing the distribution of . . . dangerous narcotics to [Decedent], . . . resulting in his death." (*Id.* ¶¶ 230, 232.) The TAC alleges that the

---

[3] The Court notes that claims 6–8 are not alleged against Does 1–6.

16

Individual Defendants "breached their duty of due care . . . by negligently failing to honestly, properly and competently investigate jail deaths" and "by negligently failing to train [officers] to make sufficiently often cell safety checks and to adequately recognize when jail inmates are suffering from severe medical distress that requires immediate medical attention and care." (*Id.* ¶ 234.)

"To maintain a tort claim against a [defendant] in his or her personal capacity, a plaintiff must . . . show that the [defendant] specifically authorized, directed or participated in the allegedly tortious conduct; or that although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm." *Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 508 (1986) (citation omitted).

Here, Plaintiffs "do[] not allege facts tying any wrongful or negligent conduct" by the Individual Defendants to Decedent's death. *See Patino*, 2023 WL 375349, at *6. The TAC alleges that the Individual Defendants are "policy-making officials." (Doc. No. 51 ¶ 15.) Specifically, Plaintiff asserts that Defendant Kelly Martinez was "the Undersheriff for the San Diego County Sheriff's Office," Defendant Theresa Adams-Hydar was employed as "an Assistant Sheriff overseeing Detention Services," Defendant William Gore "was the elected Sheriff of San Diego County," and Defendant Erika Frierson was employed as "an Assistant Sheriff overseeing Detention services." (*Id.* ¶¶ 10–13.) Plaintiff alleges each Individual Defendant was "acting in the course of and within the scope of [their] employment with [the County]." (*Id.*) Therefore, Plaintiff must allege a special relationship between Individual Defendants and Decedent. Plaintiff fails to do so. *See Osuna*, 392 F. Supp. 3d at 1183 (finding no duty where the plaintiff failed to allege that the "policy-making defendants had any relationship with the decedent"). Additionally, Plaintiffs' claims "are based on group allegations against multiple defendants that give no clarity whatsoever as to what [Defendants] did or did not do." *Patino*, 2023 WL 375349, at *6; *see also Thomas on behalf of Thomas v. Cnty. of San Diego*, No. 20-CV-1979-CAB-

17

MDD, 2021 WL 2715086, at *3 (S.D. Cal. July 1, 2021) (dismissing the plaintiff's negligence and wrongful death claims in part because the Plaintiff failed to "link any particular negligent act to any specific individual actor"); *Lomeli v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1073 (S.D. Cal. 2022) (dismissing the plaintiff's negligence claim because it was not "linked to any specific defendant"). Specifically, Plaintiffs do not allege facts showing wrongful or negligent acts each of the Individual Defendants committed. *Patino*, 2023 WL 375349, at *7. Thus, the Court grants Defendants' motion to dismiss the negligence claim against Individual Defendants.

Because Plaintiffs' wrongful death claim is derivative of the underlying negligence claim, it also fails. Accordingly, the sixth and seventh claims are dismissed as to the Individual Defendants. Plaintiffs may amend to allege facts establishing a special relationship between each Individual Defendant and Decedent, and each Defendant's specific conduct and how that conduct caused Decedent's death.

### 2. Failure to Provide Immediate Medical Care (Claim 8)

Plaintiff A.N.Y. also brings a failure to provide immediate medical care claim under California Government Code § 845.6 against the County and the Individual Defendants. (Doc. No. 51 ¶¶ 238–58.) The Individual Defendants argue that the TAC does not "allege that any of the Individual Defendants saw Decedent or were made aware of his need for medical care and chose not to respond." (Doc. No. 61-1 at 11.) Plaintiffs respond that the Court should deny Defendants' request to dismiss the state law claims because the issue has already been addressed in the Court's prior order and, under the law of the case doctrine, should not be reconsidered. (Doc. No. 63 at 6, 8.) The Court declines to do so and finds that the law of the case doctrine does not preclude its review for the same reasons discussed above.

As explained in the Court's prior Order (Doc. No. 24), California's statutory scheme distinguishes between liability of public entities and public employees for injuries to prisoners. (*Id.* at 23.) Under California Government Code § 844.6, public entities are generally immune from liability for injuries to prisoners. (*Id.*) However, the statute

23-cv-01622-AJB-SBC

expressly provides that nothing in the section "exonerates a *public employee* from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6 (emphasis added). Therefore, while § 844.6 limits the circumstances under which a public entity may be held liable, it does not immunize public employees from liability for their own conduct. *Sanchez v. Cnty. of Los Angeles*, No. CV201146DSFPVCX, 2020 WL 9074714, at *8 (C.D. Cal. Apr. 28, 2020) (Section 844.6 "makes clear that individual public employees are <u>not</u> immune from liability for their own actions or inactions.") (emphasis in original). Further, California Government Code § 845.6 creates a narrow exception under which both a public employee and the public entity may be liable where the "employee knows or has reason to know that the prisoner is in need of immediate medical care and . . . fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6; *see Brownlee v. Cnty. of Los Angeles*, No. LA CV21-01118 JAK (JPRX), 2023 WL 11950369, at *8 (C.D. Cal. June 20, 2023) (discussing the liability exceptions under § 845.6).

Here, the TAC alleges that Does 1–6 conducted "jail cell safety checks at the jail, and saw [Decedent] collapse and/or saw that he had collapsed in his jail cell, in obvious severe medical distress from overdosing on the methamphetamine and fentanyl distributed to [Decedent] while he was incarcerated[.]" (Doc. No. 51 ¶ 250.) Among other things, Plaintiff also alleges that Does 1–6 "watched [Decedent] writhe on his jail cell floor for several hours, in obvious acute severe medical distress," yet "failed to render any aid to [Decedent] or to summon/obtain immediate medical care for [Decedent]." (*Id.* ¶¶ 252, 253.)

These allegations, however, are insufficient to state a claim under § 845.6 as to the Individual Defendants. The TAC asserts these allegations only against Does 1–6 and does not identify any specific Individual Defendant who knew or had reason to know of Decedent's need for immediate medical care and failure to take reasonable action. *See Hernandez v. Cnty. of Santa Clara*, No. 19-CV-07888-EJD, 2020 WL 3101041, at *9 (N.D. Cal. June 11, 2020) (dismissing the plaintiff's failure to provide immediate medical care

claim because the complaint did not "contain factual allegations showing that any County employee knew or had reason to know" of the decedent's need for immediate medical care) (internal quotation marks and citation omitted).

Accordingly, the eighth claim is dismissed as to the Individual Defendants. Plaintiff may amend to allege specific facts demonstrating each Individual Defendant's knowledge of Decedent's need for immediate medical care and their failure to take reasonable action to summon such care.

**D.     Direct Liability Against the County for State Law Claims**

Finally, Defendants contend that the TAC improperly alleges direct liability against the County for state law claims without any statutory basis to do so. (Doc. No. 61 at 2.) Plaintiffs respond that the TAC alleges liability under California Government Code § 845.6 for wrongful death, negligence, and failure to summon immediate medical care. (Doc. No. 63 at 7.) And that "Defendants are liable pursuant to 'Cal. Civil Proc. Code § 377.30, Cal. Civil Code § 1714, and via Cal. Gov't Code §§ 815, 815.2 and 820.'" (*Id.*) Finally, Plaintiffs allege the "County is a 'public entity,' and is thus 'liable for injury proximately caused by' [the Individual Defendants] under Gov't Code, § 815.2.'" (*Id.*)

As discussed above, California Civil Code § 1714 establishes the general duty of care in California, providing that "each person has 'a legal duty to act reasonably and with due care under the circumstances with respect to their own actions.'" *Summerfield v. City of Inglewood*, 96 Cal. App. 5th 983, 999 (2023). Section 820 of the California Government Code clarifies that this general duty of care extends to public employees "to the same extent as a private person." And, under California Government Code section 815.2, "a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."

This general duty is partially modified by California Government Code §§ 844.6 and 845.6. Section 844.6 immunizes public entities from liability for "injury to a prisoner." Cal. Gov't Code § 844.6.  However, § 845.6 "creates a narrow exception to that immunity."

20

*Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013). Section 845.6 provides that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity . . . is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." California courts have construed § 845.6 to create limited liability only when: "(1) the public employee knows or has reason to know [of the] need, (2) of *immediate* medical care, and (3) fails to take reasonable action to *summon* such medical care." *Castaneda*, 212 Cal. App. 4th at 1070; *see also Lucas v. Cty. of Los Angeles*, 47 Cal. App. 4th 277, 288 (1996) (the duty to provided medical care to prisoners is limited to "cases where there is *actual or constructive knowledge* that the prisoner is in need of *immediate* medical care").

This Court previously explained that this means "(1) public entities cannot be held liable for wrongfully or negligently injuring prisoners but public employees can be; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public employee or public entity are liable); except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable)." (Doc. No. 24 at 23 (citing Cal. Gov't Code §§ 820, 844.6, 845.6).)

In its previous order, the Court dismissed Plaintiffs' state law claims with prejudice to the extent they are based on "(a) the theory that Does either provided or failed to prevent inmates from providing Decedent with narcotics; (b) the related failure to discipline/terminate jail staff theory; and (c) the failure to adequately train jail staff theory because they attempt to hold the County liable for the allegedly wrongful and/or negligent death of Decedent in violation of section 844.6 of the California Government Code." (*Id.* at 23–24.) This is because allegations concerning facilitation of narcotics, failure to train, or failure to discipline staff do not fall within this statutory exception and cannot support

direct liability. *Castaneda v. Dep't of Corr. & Rehab*, 212 Cal. App. 4th 1051, 1070 (2013) ("[S]ection 845.6 creates out of the general immunity a limited cause of action against a public entity for its employees' failure to *summon* immediate medical care only . . . [and] does not create liability of the public entity for malpractice in furnishing or obtaining that medical care") (emphasis in original).

However, the Court also found that the state law claims could "proceed against the County, insofar as it would be vicariously liable for Does 1–10's alleged failure to reasonably summon immediate medical care under California Government Code section 845.6." (Doc. No. 24 at 24.) The TAC continues to allege that County employees knew or had reason to know Decedent required immediate medical care and failed to take reasonable action to summon such care. (Doc. No. 51 ¶¶ 251–53.)

Accordingly, consistent with the Court's prior order, Plaintiffs' Claims 6–8 against the County proceed to the extent the state law claims are based on an alleged failure to summon immediate medical care under § 845.6. Claims 6–8 are dismissed with prejudice against the County to the extent Plaintiffs seek to hold the County directly liable for theories unrelated to California Government Code § 845.6, including, without limitation, the alleged provision of, or failure to prevent inmates from providing Decedent with narcotics, the failure to discipline or terminate jail staff, and the failure to adequately train jail staff. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper.") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the County's motion to dismiss. (Doc. No. 61.) The Court **ORDERS** as follows:

1.   Defendants' request to strike portions of the Third Amended Complaint is **DENIED**.

22

23-cv-01622-AJB-SBC

2.      Defendants' motion to dismiss Claim 5 against the Individual Defendants is **DENIED**.

3.      Defendants' motion to dismiss Claims 6–8 as to the Individual Defendants is **GRANTED**. Plaintiff A.N.Y.'s Claims 6–8 as to the Individual Defendants are **DISMISSED with leave to amend**.

4.      Defendants' motion to dismiss Claims 6–8 as to the County is **DENIED**. However, Plaintiff A.N.Y.'s claims as to the County _only_ remain to the extent Plaintiff's state law claims are based on an alleged failure to summon immediate medical care under § 845.6.

Should Plaintiffs choose to file an amended complaint, it must comply with the limited leave granted herein and must be filed by **no later than <u>May 13, 2026</u>**. The amended pleading **<u>must</u>** be limited to adding factual allegations against the Individual Defendants for state law Claims 6–8. Plaintiffs must concurrently file a red-lined version of the amended complaint in compliance with Civil Local Rule 15.1.c. Plaintiffs are cautioned that if their Fourth Amended Complaint does not cure the pleading deficiencies, the claims will be dismissed with prejudice and without further leave to amend.

Defendants must file and answer or otherwise respond to the operative complaint by no later than **<u>June 3, 2026</u>**. If Defendants wish to respond to the amended complaint pursuant to Rule 12, such a motion must be limited to the causes of action which Plaintiffs substantively amended.

**IT IS SO ORDERED.**

Dated:  April 28, 2026

_____
Hon. Anthony J. Battaglia
United States District Judge

23